# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SHAWN OWENS,

          Plaintiff,

       **v.**                              **Case No.  13-C-253**

**CAROLYN W COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

          Defendant.

# DECISION AND ORDER

This matter is before the Court on pro se Plaintiff Shawn Owens' ("Owens") request for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c) of the adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income ("SSI").

Also pending are Owens' motion to grant full benefits and supplemental motion for full benefits based on the Commissioner's purported failure to file a timely brief.  (ECF Nos. 17, 20.)  In opposition the Commissioner asserts that her brief was timely filed, but due to a clerical error and overreliance on the electronic filing system, she inadvertently neglected to serve Owens with the brief upon its filing.  After Owens filed his motion, she served him by mail on October 3, 2013.

Any litigant representing himself or herself in this District may not file (or

receive) documents electronically. *See Electronic Case Filing Policies and Procedures Manual* (E.D. Wis. rev. July, 28, 2011). Thus, the Commissioner must have a reliable system to ensure prompt service by mail of any paper she files in actions involving a pro se party. The Court expects that the Commissioner will be vigilant in fulfilling her obligations in this District to serve pro se litigants by mail. However, the remedy requested by Owens is overly harsh. Moreover, Owens ultimately received the Commissioner's response brief and could have filed a reply brief. Owens was not prejudiced by the Commissioner's mistake. Therefore, Owens' motion and supplemental motion to grant full benefits (ECF Nos. 17, 20) are denied.

### Background

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that physical and/or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment that exists in the national economy considering his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner has established

a five-step sequential analysis.  *See* 20 C.F.R. § 404.1520.[1]  The Commissioner's evaluation requires consideration of the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals an impairment listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.  *See Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity.  20 C.F.R. § 404.1560(c)(2).

Owens filed applications for disability insurance benefits and SSI on May 12, and July 20, 2010, alleging a disability onset date of March 2, 2009.  (Tr. 17.)  Owens' applications were denied initially and upon reconsideration.

At Owens' request, an administrative hearing was held on June 24, 2011, before administrative law judge ("ALJ") Wayne Ritter.  Owens, represented by

---

[1] The Court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to disability insurance benefits.  For SSI benefits, materially identical provisions appear in Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., and at 20 C.F.R. § 416.901 et seq.

counsel, appeared and testified. At the ALJ's request, vocational expert Jacquelyn Wenkman also appeared and testified. By an August 31, 2011, decision the ALJ denied Owens' claims. (Tr. 27.)

The ALJ found that Owens had not engaged in substantial gainful activity since March 2, 2009, and that he had severe impairments of obesity, status post right rotator cuff repair, sleep apnea, diabetes mellitus with neuropathy,[2] status post left carpal tunnel repair surgery, and a disorder of the lumbar spine. Although Owens also claimed to have additional severe impairments including gout, hypertension, headaches, and status post cervical fracture, the ALJ determined that those impairments did not cause more than minimal work-related limitations. The ALJ determined that Owens did not have an impairment or combination of impairments that meets or medically equals an impairment listed by the Commissioner.

The ALJ further found that Owens had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.97(b), except that he could only occasionally climb ramps, stairs, ladders, ropes and

---

[2]As indicated in *Craft v. Astrue,* 539 F.3d 668, 671 n.1 (7th Cir. 2008):

> Neuropathy is a nerve injury and can be sensory, motor, or autonomic in nature. A sensory neuropathic injury results in the sensation of pain, numbness, tingling, or burning. The sensation often begins in the feet and progresses toward the center of the body as the condition worsens. *See Peripheral Neuropathy*, http://www.nlm.nih. gov/medlineplus/ency/article/000593.htm (last visited July 17, 2008). Neuropathy is also a common complication of diabetes. *See Diabetic Neuropathy*, http://www.nlm.nih.gov/medlineplus/ency/article/000693.htm (last visited July 17, 2008).

scaffolds, and occasionally stoop, crouch, kneel, and crawl. He also found that Owens could perform work with no overhead reaching with the right upper extremity, and no more than frequent bilateral handling and occasional bilateral fingering. Additionally, Owens could perform work that does not require concentrated exposure to unprotected heights, hazards, and/or the use of moving machinery.

Given that RFC, the ALJ found that Owens was able to perform his past relevant work as a teacher. Alternatively, using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, as a framework for decision making together with the vocational expert's testimony, the ALJ found that, despite the reduction in Owens' ability to perform all or substantially all the requirements of light work, there are a significant number of unskilled sedentary jobs in the national economy that a person of Owens' age, education, work experience and RFC could perform. The ALJ cited jobs as security/greeter (283 jobs in Wisconsin), video surveillance monitor (329 jobs), sorter (388 jobs), and general office work (1,543 jobs).

Owens requested review of the ALJ's decision by the Appeals Council, and provided various documents which include a mental health report and a medical examination and capacity report dated September 12, 2012, from treating physician Madeline Tully ("Tully"), M.D., and a prescription from Dr. Nosheen Hasan ("Hasan"), M.D., for a right wrist brace for carpel tunnel syndrome.[3] (Tr. 427-37.)

---

[3] Also included is Hasan's order for physical therapy, assistive devices, and other information relating to physical therapy provided to Owens in the spring and summer of 2012.

Owens also provided a letter from the lawyer who represented him at his hearing supporting Owens' request for Appeals Council review (Tr. 231-34); and two statements of claimant, the latter of which attached a notice dated September 12, 2011, from the Wisconsin Department of Workforce Development ("DWD") regarding unemployment insurance, and an October 21, 2011, decision of the DWD unemployment insurance appeal tribunal finding that, although Owens became "totally restricted" from work as of November 10, 2010, through August 20, 2011, while he was receiving unemployment insurance benefits,[4] he did not intentionally suppress his inability and unavailability for work. (Tr. 236-37, 239-247.) The additional evidence was received into the administrative record before the Appeals Council. (Tr. 10.)

---

[4] Section 108.04(1)(a)2, of the Wisconsin Statutes states that an employee who is unavailable for or unable to perform more than 16 hours of the work available in a particular week is ineligible for unemployment compensation benefits that week. Able to work is defined in Wis. Admin. Code § DWD 128.01, which states:

> Able to work means that the claimant maintains an attachment to the labor market and has the physical and psychological ability to engage in some substantial gainful employment in suitable work. During any week, a claimant is not able to work if the claimant is unable to perform suitable work due to a physical or psychological condition. In determining whether the claimant is attached to the labor market and able to perform suitable work, the department shall consider all factors relevant to the circumstances of the case, which may include the following:
>
> 1. The claimant's usual or customary occupation.
>
> 2. The nature of the restrictions caused by the claimant's physical or psychological condition.
>
> 3. Whether the claimant is qualified to perform other work within the claimant's restrictions considering the claimant's education, training, and experience.
>
> 4. Occupational information and employment conditions data and reports available to the department showing whether and to what extent the claimant is able, within his or her restrictions, to perform suitable work in his or her labor market area.

Owens' request for review was denied on September 24, 2012, leaving the ALJ's decision as the final decision of the Commissioner. Owens commenced this action on March 6, 2013. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## Analysis

### *Other Disability Determinations*

Owens contends that the ALJ should have found him disabled because he has been deemed permanently disabled with chronic physical and mental impairments by Milwaukee County Circuit Court Judges, the Milwaukee County Department of Child Support Enforcement, the DWD, the Wisconsin Department of Industry and Labor Commission, American Disabled Veterans, the Center for Veterans Issues, and the Wisconsin Department of Motor Vehicles.

Evidence of an impairment includes "decisions by any governmental or nongovernmental agency about whether [an individual is] disabled." 20 C.F.R. § 404.1512(b)(5). However, "[a] determination made by another agency that you are disabled . . . is not binding on [the Commissioner]." 20 C.F.R. §§ 404.1504, 416.904; *see also* Social Security Ruling ("SSR") 06-03p (2006).

*Allord v. Barnhart,* 455 F.3d 818, 820 (7th Cir. 2006), held that when determining whether Allord was disabled due to a longstanding post-traumatic stress disorder ("PTSD"), the ALJ was required to give "some weight" to a Veterans Administration ("VA") determination that Allord was totally disabled, although the

determination was made four years after Allord had lost his disability benefits coverage; the psychologist diagnosed severe and chronic PTSD four months after Allord's coverage lapsed, began treating him three years later, and opined that Allord was totally disabled six years before his coverage lapsed; another VA psychologist who evaluated Allord concurred; and Allord's friend, for whom Allord had done some handyman work, testified that for the years before Allord's coverage ended, he could not communicate or carry out instructions and failed to show up for work on a regular basis. However, in *Clifford v. Apfel,* 227 F.3d 863, 874 (7th Cir. 2000), the court stated the "ALJ is not required to (but may) consider the disability findings of other agencies."

The determinations cited by Owens are not part of the administrative record[5] and, therefore, were not subject to consideration by the ALJ. However, at the hearing, the ALJ asked Owens about his unemployment compensation claim. (Tr. 70-71.) The discussion was as follows:

> [ALJ] So, you were on Unemployment Compensation from the third quarter of 2009 to the first quarter of this year; during that time were you not holding yourself out as able to work?

---

[5]Although not before the ALJ, Owens sent a certificate of appreciation issued by the Disabled American Veterans organization in support of his request to the Office of Hearing and Appeals for additional time to file his action for judicial review. (Tr. 3.) In this action, Owens filed a June 26, 2013, letter from Janet Hern ("Hern"), Team Lead for Operation Turning Point, a federally funded supportive housing program for homeless disabled veterans and their families. (ECF No. 21.) The letter references a medical evaluation of Owens by "Dr. Tully," however, none is attached.

| [OWENS] | What's that? |
|---|---|
| [ALJ] | Weren't you holding yourself out as able to work in order to get Unemployment Compensation? |
| [OWENS] | I mean, I went through the questions or whatever I asked them – at the Social Security Administration how should I handle that, you know, with that, they just said go through the questions, you know, like, you know, like you've been going through them or whatever. |
| [ALJ] | No, my question was; weren't you saying you were able to work? |
| [OWENS] | Per the advice of the Social Security Administration, right. I was going through the questionnaires, because I was asked – that's why I went in and applied for the Disability. So, to get off the Unemployment, because I wasn't able to go for that, but they said – if you're eligible for the Unemployment, you go through the questions like you normally have been going through them. |
| [ALJ] | Okay. |

In assessing Owens' credibility, the ALJ noted that Owens "applied for and received unemployment compensation from 2009 until 2011," and that "[i]n doing so, the claimant has reported that he is able to work during the same period he now claims he was disabled." (Tr. 22.) The ALJ stated that although "[t]he fact that he has received unemployment compensation is certainly not dispositive," he found that "it does somewhat diminish the credibility of his allegations as to severity." (*Id.*) The ALJ clearly considered the unemployment compensation claim, although he drew a different conclusion than Owens desired.

The ALJ rejected Owens' explanation for why he continued to collect unemployment compensation. Since an ALJ is in the best position to determine the credibility of witnesses, that determination is reviewed deferentially and will be overturned only if it is patently wrong. *Craft,* 539 F.3d at 678. Owens has not met that burden with respect to his continued receipt of unemployment compensation.

### Daily Activities

Owens contends that the ALJ's summary of his daily activities is misleading, and that the ALJ disregarded the requirement, as explained in SSR 96-8p, that a person who can handle light work must be able to do so on a "regular and continuing basis" meaning eight hours a day, five days a week, or an equivalent work schedule.

At the hearing Owens, who is right handed, was wearing a sling due to a March 2011 rotator cuff surgery on his right shoulder. He also requested a break so he could walk briefly. With respect to his daily activities, Owens testified that he was not able to vacuum or do the laundry. Either he had someone else do his grocery shopping or he stayed in the car. If he was feeling a bit better he would make some dishwater and wash down the counter. He could not wash pots and pans, so he had food brought in. He could only walk half a block at most, sit 10 or 20 minutes, and could not stand for long. On bad days he had pain everywhere. He had lost contact with a lot of people and ha[d] "isolated [himself] a little bit." (Tr. 69.)

Owens testified that he had "extreme migraines" and was trying to regain cognitive skills, including memory problems, difficulty with math, and his

vocabulary, that he lost as a result of the July 2010 neck fracture and concussion. (Tr. 63.) He also testified that the frequency of his gout attacks had increased, he was still coping with a gout attack he had two months earlier, and when he had gout attacks he was on crutches for a couple of weeks and going from the bed to the bathroom was a challenge. Gout affected his ability to walk and stand, and get in and out of cars. He was being treated by Hasan because of pain problems despite taking strong narcotic pain medications. Owens also had sleep apnea which causes him to be fatigued during the day.

In determining credibility "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); see 20 C.F.R. § 404.1529(c)(3); SSR 96–7p.[6] The ALJ's decision "must contain 'specific reasons'

---

[6] Social Security Ruling 96-7p requires that the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve

for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.* The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons, supported by substantial evidence, for that finding. *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). In rendering his decision the ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012) (citation omitted).

Here, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 22.) *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012), strenuously criticized nearly identical language. However, where boilerplate language is accompanied by additional reasons, a credibility determination

---

pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Rulings are directives that an ALJ is required to follow. *Nelson v. Apfel,* 210 F.3d 799, 803 (7th Cir. 2000).

need not necessarily be disturbed if it is otherwise adequate. *Pepper v. Colvin,* 712 F.3d 351, 367-68 (7th Cir. 2013); *Shideler*, 688 F.3d at 311-12.

In reviewing Owens' daily activities, the ALJ did not mention Owens' hearing testimony. Rather he cited to the form completed by Owens in June 2010, which predated Owens' July 2010 accident when a commercial garage door hit his head and fractured a portion of his cervical vertebrae, leading to new medical problems requiring treatment. Nonetheless, the ALJ relied on the June 2010 information and found that Owens was able to prepare simple meals and perform basic household chores, and that he also cared for children without any special assistance. The ALJ stated, "[c]aring for children can be demanding both physically and emotionally. [Owens] also participates in fundraising events and attends church sporting events. Given such a varied social calendar, combined with his good ability to perform daily activities, [Owens] appears capable of sustaining light work." (Tr. 22.) The ALJ also observed that Owens "reported a fairly active lifestyle, such as being able to vacuum, take out the garbage, and mow the lawn." (Tr. 23).

In this instance, the ALJ was considering the claim of disability covering the time between March 9, 2009, and the August 11, 2011, date he issued his decision. Owens had a traumatic injury on July 6, 2010, yet the ALJ relied only on Owens' June 2010 activities and did not acknowledge Owens' hearing testimony or discuss Owens' conduct during the hearing. The ALJ did not adequately articulate his consideration of the evidence favorable to Owens about his daily activities and pain.

An ALJ is not permitted to "cherry-pick" from those mixed results to support a denial of benefits. *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). Therefore, the action must be remanded pursuant to sentence four for further proceedings.

## Medical Opinions

Owens also contends that the ALJ should have accorded significant weight to the opinions of his treating physicians, orthopedic surgeon Dr. Sean C. Tracy ("Tracy"), M.D.; Hasan of the Wheaton Franciscan Pain Clinic; and Tully of the Westside HealthCare Association, Inc. ("Westside") (Pl.'s Br. 9, 11); and that the ALJ improperly gave weight to consulting physician Pat Chan's ("Chan"), M.D., July 9, 2010,[7] opinion finding that Owens had the RFC for light work. (*Id*. at 8.). A decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support his conclusions adequately, remand is appropriate. *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). The Court's review is limited to the reasons articulated by the ALJ in the written decision. *Id.* A treating physician's opinion that is consistent with the record is generally entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection. 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th

---

[7] A "treating source" is defined as a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Conversely, a "nontreating source" is "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you." *Id.*

Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. *Jelinek,* 662 F.3d at 811. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft,* 539 F.3d at 673 (citation omitted).

An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996).

### Chan

Based on his review of the record, on July 10, 2010, Chan completed a physical RFC assessment indicating that Owens was capable of performing a full range of light work. (Tr. 349-56.) The ALJ accorded significant weight to this state agency medical consultant's opinion. (Tr. 23.) "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.").

Chan's assessment does not mention Owens' July 5, 2010, accident when the commercial garage door fell on his head as documented in 41 pages of medical records. Owens was initially seen at the emergency room and discharged. (Tr. 313-316). Owens was called back to the hospital and admitted on July 6, 2010. (Tr. 317-18.) Dr. Paramjith S. Chawla advised Owens to rest for at least a week and not to do any strenuous activity. (Tr. 335.) The diagnosis upon Owens' July 8, 2010, discharge was a fracture of the C2 pedicle on the right side.

The ALJ determined that the evidence submitted after Chan issued his opinion suggested that Owens was "somewhat more limited than he has assessed," (Tr. 23.) and restricted Owens to a range of light work with the limitations that he "can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally stoop, crouch, kneel, and crawl[;] [Owens] can perform work with no overhead reaching with the right upper extremity, and no more than frequent bilateral handling, and occasional bilateral fingering[;] and [Owens] can perform work that does not require concentrated exposure to unprotected heights, hazards, and use of moving machinery." (Tr. 21.) The ALJ acted reasonably when he considered subsequent medical problems experienced by Owens and augmented the limitations identified by Chan.

*Tracy*

In August 2010, Tracy wrote a note stating "[i]n regards to right shoulder, may do sedentary work only." (Tr. 23, 360). The ALJ pointed out that the "note is quite vague and it is not clear whether . . . Tracy is familiar with SSA regulations or descriptions of work limitations." (Tr. 23). Although the ALJ accepted Tracy's opinion "that [Owens] is limited to no overhead reaching with the right upper extremity," he reasonably found that Tracy's opinion regarding sedentary work was not entitled to significant weight "because the medical records do not support a restriction to sedentary work based on the claimant's shoulder impairment alone; that is, the opinion gives no basis or rationale for limiting the claimant in walking or standing, or limiting his ability to use his left upper extremity." (*Id.*) *See Dixon,* 270 F.3d at 1177 ("A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.").

*Hasan*

On November 17, 2010, Tracy referred Owens to Hasan for epidural shots to the right L4-5 and L5-S1 for treatment of spinal stenosis. (Tr. 361.) Hasan also referred Owens to Neal H. Pollack, D.O., ("Pollack") a board certified neurologist, who conducted an electromyogram (EMG) and a nerve conduction velocity test ("NVC") of Owens' lower extremities on April 19, 2011. (Tr. 411.) Pollack's impression was sensory neuropathy and right L5 radiculopathy. (*Id.*)

- 17 -

On June 15, 2011, Hasan completed a functional capacity questionnaire in which she indicated that since November 2010, Owens had diagnoses of low back pain ("LBP"), rotator cuff tear post repair, carpel tunnel hand surgery, headaches, neck pain, indicating that the pain was chronic shooting, sharp, numbness, tingling and muscle spasm. Hasan stated she had been seeing Owens once a month and opined that Owens was limited to continuously sitting for 45 minutes at time and continuously standing for 20 minutes; Owens could only sit for two hours and only stand for two hours during an eight hour day, and he would need to walk every ten minutes for three minutes at a time. Hasan estimated that often to frequently Owens experienced pain or other symptoms severe enough to interfere with his attention and concentration, and that Owens' ability to tolerate stress was moderate. She also indicated that Owens had significant limitations in doing repetitive reaching, handling and fingering, and would be absent from work more than three times a month. (Tr. 404-08.)

The ALJ stated he accorded "very little weight" to the "extreme limitations" provided by Hasan's report because Hasan failed to "provide reasons to support his [sic] assertions." (Tr. 24). However, Hasan cited a rotator cuff range of motion of less than 180 degrees, a positive Tinel's sign in both hands and positive straight leg raising.[8] (Tr. 404.) The ALJ's decision to give very little weight to Hasan's assessment is not supported by substantial evidence and, therefore, the Court cannot

---

[8] There is an additional notation about flexion/extension. (Tr. 404.) However, the Court cannot decipher the writing immediately following those words.

uphold the ALJ's decision with regard to Hasan's assessment.

*Tully*

In November 2010 and June 2011, Tully opined that Owens was disabled (Tr. 24, 366, 414-16). Owens was first seen at Westside by Christiana Rolene Phillips ("Phillips") PA-C,[9] on March 3, 2010. (Tr. 371-72.) Phillips saw him again on March 10, March 24, and June 22, 2010. (Tr. 305-06, 367-70.) The next information from Westside is Tully's November 10, 2010 opinion on Westside prescription paper that states in full: "Mr. Owens is unable to work due to multiple medical conditions. He is permanently disabled." (Tr. 366.)

Tully's June 30, 2011, opinion is a three-page letter with the following list of active problems: arthritis, with multiple joint involvement; ganglion cyst of the wrist; carpel tunnel syndrome on both sides; acromioclavicular joint arthritis; type II diabetes mellitus without complication; essential hypertension, benign; hyperlipidemia; renal insufficiency; gout; esophageal reflex; and obstructive sleep apnea with a positive sleep study dated April 2011. She also reported three surgeries: carpal tunnel decompression in 2008; excision of a pilonidal cyst in 2007; rotator cuff repair right side in 2011. Tully stated Owens had been her patient since 2010, and

---

[9] A PA-C is a certified physician assistant who practices medicine under the supervision of a licensed physician. *See Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, 2014-15 Edition, Physician Assistants,* http://www.bls.gov/ooh/healthcare/physician-assistants.htm (last visited Mar. 28, 2014). All physician assistants must be certified. *Id.*

had monthly medical visits since September 2010.  She stated that "in [her] medical opinion" he was "permanently disabled" and [she did] not expect that he will ever be able to participate in full time work again.  (Tr. 414.)  Tully reported that Owens' symptoms were daily headaches, neck and back pain, shoulder pain, stiffness and weakness in both upper extremities, memory loss, difficulty with concentration and computational skills, fatigue, and shortness of breath.  She also reported clinical findings of decreased range of motion in the right shoulder, decreased sensation in his left lower leg, impaired sensation and strength in both wrists, and stated "[p]lease see detailed notes from physical therapists, orthopedic, hand specialists, and pain management providers."  (Tr. 415.)  She also gave detailed assessments of Owens' functional limitations.

The ALJ gave little weight to Tully's November 2010, opinion stating that her relationship with Owens was very short at that point, her opinion was "highly conclusory without any evidence to support her assertion" and only gave an opinion that Owens was disabled, "an issue reserved for the Commissioner"  (Tr. 24).  "[A] claimant is not entitled to disability benefits simply because [his] physician states that [he] is 'disabled' or unable to work.  The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled."  *Dixon,* 270 F.3d at 1177; *see also* 20 C.F.R. §§ 404.1527(d) (medical source opinions concerning disability are "not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a

case"); SSR 96-5p, ("[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.") The ALJ could properly give little weight to Tully's November 2010, opinion.

With respect to Tully's June 2011 assessment, however, the ALJ acknowledged it was detailed but stated, "little weight is given to . . . Tully's opinion because of the minimal treating relationship with [Owens], and because the limitations she assessed are generally inconsistent with the mild objective findings, the conservative treatment record, and [Owens'] better actual functioning as shown by his admitted activities of daily living noted above and in the record." (Tr. 24-25.) As previously noted, the ALJ's assessment of Owens' daily activities is incomplete and cannot be upheld. Furthermore, the ALJ's stated reasons for discounting Tully's June 2011 opinion are not supported by substantial evidence. Tully cited objective evidence, had been treating Owens for two years, and had familiarity with his condition. Her opinion is also consistent with the record of continuing problems and treatment documented by specialists Tracy, Hasan, and Pollack. The referrals provide support for the continuing problems claimed by Owens.

On remand the weight afforded to Hasan's opinion, Tully's June 2011 opinion, as well as Pollack's records must be revisited. The Commissioner must also consider Tully's 2012 evaluations submitted to the Appeals Council. This remand may also require that steps two through five of the disability evaluation be revisited.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Owens' motion to grant him full benefits and his supplemental motion for full benefits (ECF Nos. 17, 20) are **DENIED**;

Owens' action for judicial review is **GRANTED.** Pursuant to sentence four of 42 U.S.C. §405 this action is **REMANDED** for further proceedings consistent with this Decision and Order; and

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2014.

BY THE COURT:

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**